# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| DAVID WOODLEY, | ) | |
| | ) | CASE NO. 1:05CV0028 |
| Petitioner, | ) | |
| | ) | JUDGE WELLS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| MARGARET BRADSHAW, Warden, *et al*, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner, David Woodley, ("Woodley"), challenges the constitutionality of his conviction in the case of *State v. Woodley*, Case No. CR 409360.  Woodley, through counsel, filed a Petition for Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on January 6, 2005 with the United States District Court for the Northern District of Ohio.  This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For reasons set forth in detail below, the Magistrate Judge recommends Woodley's Petition for Writ of Habeas Corpus (Doc. No. 1) be DENIED.

## I.  Procedural History

**A.**     **Conviction**

The Cuyahoga Grand Jury returned a forty-seven count indictment against Woodley.

Upon the State's motion, the trial court dismissed thirty-nine of the counts.  Woodley proceeded

to trial on: four counts of gross sexual imposition (of a person under the age of thirteen) in

violation of Ohio Revised Code ("O.R.C.") § 2907.05; two counts of rape (of a person under the

age of thirteen, with threat of force or force) in violation of O.R.C. § 2907.02; one count of

kidnapping in violation of O.R.C. § 2905.01, with a sexual motivation specification; and one

count of importuning (a person under the age of thirteen) in violation of O.R.C. § 2907.07.

(Doc. No. 13, Exh. C.)

A jury found Woodley guilty on all but the kidnapping count and accompanying

specification.  (*Id.*)  The trial court sentenced Woodley to consecutive prison terms of: three

years on each gross sexual imposition count; life on each rape count; and nine months on the

importuning count.  (*Id.*)

**B.**     **Direct Appeal**

Woodley, through counsel, appealed the trial court's judgment and sentence to the Ohio

Court of Appeals.  (Doc. No. 13, Exh. D.)  The Court of Appeals affirmed in part the trial court's

judgment and remanded the case to the trial court for the limited purpose of properly notifying

Woodley of mandatory post-release control.  (Doc. No. 13, Exh. G.)  Woodley appealed to the

Ohio Supreme Court.  (Doc. No. 13, Exh. H.)  The Ohio Supreme Court denied Woodley leave

to appeal and dismissed the appeal as not involving any substantial constitutional question.

(Doc. No. 13, Exh. J.)

**C.     Federal Habeas Petition**

On January 6, 2005, Woodley, through counsel, filed a Petition for Writ of Habeas

Corpus, asserting the following two grounds for relief:

> GROUND ONE: The trial court denied the indigent Mr. Woodley
> his federal constitutional rights, guaranteed by the Fifth, Sixth, and
> Fourteenth Amendments, to due process and trial, when it refused
> to order that a psychiatric evaluation be prepared despite
> substantial indicia that Mr. Woodley's confession was involuntary,
> he was incompetent to stand trial, and he was insane at the time of
> the alleged offenses, thus preventing Mr. Woodley or his counsel
> from effectively litigating these issues.
>
> GROUND TWO: The evidence was insufficient to sustain a
> conviction for forcible rape of a child under O.R.C. 2907.02 (2001
> ed.), thus causing the rape convictions to be in violation of
> Fourteenth Amendment due process.

(Doc. No. 1)

## II.  Standard of Review under the AEDPA - Review on Merits

This case is governed by provisions of the Antiterrorism and Effective Death Penalty Act

of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), because Woodley

filed his habeas petition after the effective date of AEDPA.  *See Lindh v. Murphy*, 521 U.S. 320,

326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the Supreme
> > Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the
> > facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Federal courts are bound by a state court's determination of a petitioner's claims, unless the decision by the state court involved an unreasonable application of clearly established federal law.  *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir.1998).  In *Williams v. Taylor*, 529 U.S. 362, 411 (2000), the Supreme Court held that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Stated differently, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. The Court noted that the term "unreasonable" is "no doubt difficult to define," but the Court did not expound on the word's meaning in this context, instead stating that "it is a common term in the legal world, and, accordingly, federal judges are familiar with its meaning."  *Id*. at 410.  The Sixth Circuit interprets the *Williams* test to mean if a court "believe[s] that a state court incorrectly applied federal law, [it] must refuse to issue the writ of habeas corpus if [it] finds that the state court's decision was a reasonable one."  *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000).

### III.  Analysis - Review on Merits

### A.      Ground One: Trial Court's Denial of Psychiatric Evaluation

In his first ground for relief, Woodley claims that the trial court erred when it denied him a psychiatric evaluation despite substantial indicia showing: (1) he was incompetent to stand trial; (2) he was insane at the time of the alleged offenses; and (3) his confession was involuntary.  Woodley, through counsel, filed a motion for a psychiatric examination to

4

determine his competency to stand trial and his sanity at the time of the alleged crimes. When Woodley appeared in court, the trial court denied Woodley's motion, but gave Woodley's counsel the opportunity to supplement the written motion with oral argument. After argument, the trial court affirmed its ruling. Woodley, through counsel, also filed a Motion to Suppress Statements and Search of Defendant's Residence and to Refer Defendant for Mental Examination.

Woodley claims that the psychiatric examination was necessary to determine whether Woodley: had the capacity to give a voluntary statement to police; had the capacity to consent to a search; was sane at the time of the alleged crimes; and had the competency to stand trial. Upon a hearing, the trial court denied this motion.

### 1.    Competency to Stand Trial

In dismissing this claim, the Court of Appeals held that the trial court did not abuse its discretion in denying Woodley's motion for psychiatric evaluation based on his alleged incompetency to stand trial. On September 10, 2001, the trial court held a hearing and allowed the defense an opportunity to present oral argument on the motion for psychiatric evaluation. Woodley's counsel indicated that Woodley gave short, repeated, and rhythmic responses that time or death means nothing to him and Woodley did not assist with trial preparation.

Upon the court's inquiry at the hearing, Woodley's counsel indicated that Woodley has never had mental health treatment. Further, Woodley stated: "Unfortunately, I have come to you with this type of case. But it won't be necessary to put me on suicide watch. I'm very competent to stand trial." (Tr. 13.) Upon the court's inquiry, Woodley indicated that he graduated from high school, was employed in the housekeeping field, and took care of his

5

elderly mother.  He informed the court that in prison he reads the newspaper and the Bible, and

attends Bible study on a daily basis where he helps other inmates cope with their confinement.

In regard to his mental health, Woodley stated: "I'm doing real well.  I've adjusted well.  I get

along with everyone in my pod, and I respect them."  (Tr. 14.)  The following exchange took

place between the court and Woodley:

> COURT: Have you ever been able to have [] conversations
> [regarding what did nor did not happen] with your attorney?
>
> WOODLEY: Yes, I have.
>
> COURT: Are you in a position to take advice and appreciate
> advice, and give the consideration it deserves?
>
> WOODLEY: Yes, I can.  And I thanked him for that.  He's been
> very helpful with me.
>
> COURT: He's a very well-respected attorney.  Do you recognize
> him as a good attorney?
>
> WOODLEY: Yes, I do.  Very much so.  I don't having nothing bad
> to say about him.  You know, he's been really good to support me.
> I understand he's looking for my best interest.  We're kind of
> contemporary in age, and so forth.  I feel I have to arrive at this
> truth, and I want to thank him before you, personally.

(Tr. 16-17.)

In *Dusky v. U.S.*, 362 U.S. 402 (1960), the Supreme Court announced the test for

evaluating a defendant's competency to stand trial: "It is not enough for the district judge to find

that 'the defendant [is] oriented to time and place and [has] some recollection of events, but that

the 'test must be whether he has sufficient present ability to consult with his lawyer with a

reasonable degree of rational understanding -- and whether he has a rational as well as factual

understanding of the proceedings against him.'"  A court's failure to make a proper competency

6

inquiry where there is substantial evidence of a defendant's incompetency violates due process by depriving the defendant of his right to a fair trial. *Pate v. Robinson*, 383 U.S. 375, 385-86 (1966); *see also Pate v. Smith*, 637 F.2d 1068, 1072 (6th Cir. 1981) ("Once a reasonable doubt arises as to the competence of a person to stand trial, the issue must be decided on the basis of a hearing."). Although the Supreme Court has not "prescribed a general standard with respect to the nature or quantum of evidence necessary to require resort to an adequate procedure" for determining competency, the Court has explained that "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but . . . even one of these factors standing alone may, in some circumstances, be sufficient." *Drope v. Missouri*, 420 U.S. 162, 172 (1975).

In the instant action, the trial court made a sufficient inquiry into Woodley's competency to stand trial and its finding was adequate. Woodley's responses to the trial court's inquiry did not demonstrate the type of behavior that Woodley's counsel described as rhythmic and repeated answers or an inability to assist in pretrial preparation. Woodley informed the Court he was competent to stand trial, was able to converse with his attorney regarding the case, and was doing well. Woodley demonstrated that he had sufficient ability to consult with his lawyer with a reasonable degree of rational understanding and had a rational, as well as factual, understanding of the proceedings against him. Moreover, under Ohio law, the trial court was not required to order a psychiatric or psychological examination of Woodley.[1]  *See* O.R.C. §

_____

[1]Similarly, under federal law, a psychiatric examination is not required without a showing of reasonable cause of incompetency. A federal court may order a psychiatric or psychological examination and commit a defendant for a period not to exceed thirty days if the

7

2945.371(A).[2]  Therefore, the Court of Appeals decision is neither contrary to, nor an

unreasonable application of clearly established federal law.

> **2.**      **Sanity at Time of Offenses**

In dismissing this claim, the Court of Appeals held that the trial court did not abuse its

discretion in denying Woodley's motion for psychiatric evaluation based on his alleged insanity

at the time of the offenses.  The Court of Appeals, relying on *State v. Mason*, 82 Ohio St.3d 144,

150 (1998), a case that cited the United States Supreme Court, stated:

> Pursuant to *Ake* [*v. Oklahoma*, 470 U.S. 68, 83 (1985)] and its progeny, in order
> to establish a violation of due process as guaranteed by the Fifth and Fourteenth
> Amendments to the United States Constitution, "a defendant must show more
> than a mere possibility of assistance from an expert.  Rather, a defendant must
> show a reasonable probability that an expert would aid in his defense, and that

---

court has "reasonable cause" to believe that the person may be incompetent to stand trial. 18
U.S.C. §§ 4241(a)-(b); 18 U.S.C. § 4247(b); *see generally United States v. White*, 887 F.2d 705,
709 (6th Cir.1989) (recognizing that under § 4241, "the district court has not only the
prerogative, but the duty, to inquire into a defendant's competency whenever there is 'reasonable
cause to believe' that the defendant is incompetent to stand trial"). Thus, prior to ordering a
competency examination, the court must find reasonable cause to believe the defendant is
incompetent. *United States v. Davis*, 93 F.3d 1286, 1290 (6th Cir.1996) (holding that the district
court erred by ordering a competency examination without first finding reasonable cause to
believe the defendant was incompetent); *see also Lenhard v. Wolff*, 603 F.2d 91, 93 (9th
Cir.1979) ("Some minimum showing of incompetence must appear before a hearing is
necessary."). A defendant's "lack of objection to a competency examination does not justify the
order." *Davis*, 93 F.3d at 1290.

[2]O.R.C. § 2945.371(A) provides:

If the issue of a defendant's competence to stand trial is raised or if a defendant
enters a plea of not guilty by reason of insanity, the court *may* order one or more
evaluations of the defendant's present mental condition or, in the case of a plea of
not guilty by reason of insanity, of the defendant's mental condition at the time of
the offense charged. An examiner shall conduct the evaluation.

(emphasis added.)

denial of expert assistance would result in an unfair trial."

*Mason*, 82 Ohio St.3d at 150.  In this case, the Court of Appeals found that the trial court did not make this finding under *Mason* and, therefore, was not required to provide Woodley with funds for psychiatric expert assistance.  The Court of Appeals, also relying on its reasoning for denying Woodley's claim regarding incompetency to stand trial, noted that Woodley did not plead not guilty by reason of insanity.

A criminal defendant's right to due process also includes the right to an examination by a competent psychiatrist when sanity is likely to be a significant factor at trial.  *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985) ("We therefore hold that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is likely to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.")

In the instant action, Woodley was not entitled to a psychiatric examination because he did not demonstrate that his sanity at the time of the offenses was likely to be a significant factor at trial.  Woodley, in his habeas brief and state court brief, argues only that his trial counsel informed the court that such counsel had a "substantial doubt" as to Woodley's sanity at the time of the alleged offenses.  Woodley fails to present this Court with evidence supporting his alleged insanity at the time of the offenses.  Further, Woodley failed to plead not guilty by reason of insanity.  Accordingly, the trial court was not required to order a psychiatric examination of Woodley.  Therefore, the Court of Appeals decision is neither contrary to, nor an unreasonable application of clearly established federal law.

9

**3.    Motion to Suppress Statements and Search of Defendant's Residence and to Refer Defendant for Mental Examination**

Woodley also filed a Motion to Suppress Statements and Search of Defendant's Residence and to Refer Defendant for Mental Examination. Woodley claimed that the psychiatric examination was necessary to determine whether Woodley had the capacity to (1) give a voluntary statement to police, and (2) consent to a search of his residence.  Woodley claims, therefore, that the court's denial of his request for psychiatric review deprived him of the opportunity to meaningfully challenge the constitutionality of his confession and evidence seized from his residence.  In dismissing this claim, the Court of Appeals found that, given the totality of the circumstances, the trial court did not err in denying Woodley's motion to suppress.

The trial court held a hearing on the motion and once again inquired into Woodley's mental health.  On oral argument, defense counsel claimed that Woodley could not make intelligent and knowing decisions because Woodley wanted to introduce his confession although he claimed it was false.  The trial court read the charges to Woodley and indicated that if a jury found him guilty, he would be in prison for the rest of his life with no chance of parole. Woodley indicated that he understood the charges, the consequences if found guilty, the process of a trial and the State's burden of proof.  (Tr. 25-29, 40-49.)  Further, in regard to the confession, Woodley indicated that he understood that if the jury believed that he made the statement describing his sexual encounters with the victim and it was true, he would be found guilty.  Woodley also indicated to the Court that while Woodley was on suicide watch, he was evaluated by a psychiatrist and cleared to go back into the main prison population.  (Tr. 48-49.) Although Woodley denied his guilt and stated that the detectives told him what to say in the written confession, he indicated that he wanted the jury to hear the confession so he could

10

explain that it was false.  (Tr. 30.)  However, upon the Court's further inquiry, Woodley stated that he would accept his counsel's advice if he told him that the statement should be kept out of the case.

Detective ("Det.") Johnstone, one of the detectives who took Woodley's statement, testified at the hearing.  Det. Johnstone testified to the following:  he provided Woodley with a written form of the *Miranda* rights, in which Woodley read aloud and initialed each paragraph; Woodley explained his knowledge of the events and the detectives asked him questions; the detectives provided Woodley with a typed statement for his review, which Woodley signed; Woodley seemed attentive and was not demonstrating any unusual behavior; and Woodley's statement was consistent with the victim's account of the events.  Woodley did not testify at the hearing.

When an individual is taken into custody or otherwise deprived of his freedom by the authorities, "[h]e must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."  *Miranda v. Arizona*, 384 U.S. 436, 479 (1966).  The following three factors are required to determine the involuntariness of a confession: (1) the confession was extorted by objectively coercive police activity; (2) examination of defendant's subjective state of mind to determine whether coercion was sufficient to overbear the will of the accused; and (3) causation, *i.e.*, the police conduct was the "crucial motivating factor" behind the decision to confess.  *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988).

11

In the instant action, Woodley essentially argues that the trial court's denial of his request for a mental evaluation violated his constitutional rights because it may have shown that he did not have the mental capacity to waive his *Miranda* rights and give a voluntary confession or consent to a search of his residence.  Woodley's counsel claims Woodley gave the statements to police because he told the authority figures what they wanted to hear.  However, in denying Woodley's request for a mental examination, the Court questioned Woodley in detail.  Woodley indicated that he understood the charges against him, the penalty if found guilty, the process of a trial and the burden of proof.  Det. Johnstone testified in detail to the circumstances of Woodley's confession.  Det. Johnstone stated that he was not suspicious of Woodley's mental capacity.  The Court finds the trial court's inquiry of Woodley sufficient to determine whether he had the capacity to voluntarily give a confession and consent to a search of his residence.  Further, the testimony at the hearing supports the trial court's ruling that Woodley's statement was given voluntarily, knowingly and intelligently.  Accordingly, the Court of Appeals' decision is neither contrary to, nor an unreasonable application of clearly established federal law.

**B.        Ground Two: Insufficiency of the Evidence**

In his second ground for relief, Woodley claims there was insufficient evidence for the jury's finding that Woodley raped the victim with force or threat of force pursuant to O.R.C. § 2907.02.

O.R.C. § 2907.02(A)(1)(b) states, in relevant part:

No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when . . . the other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

The statute also provides that if the offender violated this section and purposely compelled the victim to submit by force or threat of force, the person shall be imprisoned for life. O.R.C. § 2907.02(B).  For the purposes of this statute, "force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." O.R.C. § 2901.01.

Woodley claims that the evidence presented at trial, *i.e.*, his threats to the victim that he would kill her if she told anyone about the sexual activity, did not establish the force element because such threats were not made to force the victim to engage in sexual encounters constituting the rape offenses.

At trial, the victim testified that she first met Woodley at the library, she saw him at the library more than once and visited him several times at his house.  In response to the State's question of whether the victim was ever alone with Woodley in the library and if anything unusual occurred, the victim testified that on one occasion at the library Woodley touched her breast under her shirt and told her that she "better not tell [any]body."  (Tr. 333.)  The State then inquired into sexual incidents between the victim and Woodley at his home.  The victim testified as follows:  the first time at his home, Woodley took his and her clothes off and laid on her and went "up and down" but did not penetrate her; the second and third times, he attempted to penetrate her and she said it hurt and told him to stop;[3] and at other times, he put his tongue on her breasts and vagina, attempted to penetrate her anally and put his finger in her vagina.   (Tr. 340-55.)  After inquiring about the two incidents involving Woodley's tongue and finger, *i.e.*, the rape offenses, the victim testified that she was afraid of Woodley because he told her he would kill her if she told anyone.  (Tr. 356.)  There is no time frame associated with this

---

[3] She testified that each time she told him to stop, he did.  (Tr.371).

comment.  There is also evidence that over a period of approximately ten  months, the victim

engaged in sexual conduct with the defendant more than 30 times, traveled to his home on her

bicycle to engage in sexual conduct, and accepted money from him.

In dismissing Woodley's insufficient evidence claim, the Court of Appeals stated:

> Child testified that she was scared because appellant told her he
> would kill her if she told anyone. The sexual acts that appellant
> performed on Child happened repeatedly, on more than thirty
> occasions when Child was at the home of appellant and at the
> library.
>
> ***
>
> Here, a 49 year old man lay atop an 11 year old child performing
> sex acts upon her. Appellant threatened to kill her if she told
> anyone. Child testified that she experienced pain and told appellant
> to stop. In *State v. Thompson (Oct. 31, 2002), Cuyahoga App. No.
> 79334, 2002 Ohio 595*7, under similar facts, this court found the
> evidence sufficient to establish force.

(Doc. No. 13, Exh. G.)  The Court of Appeals found that, when viewing the facts in the light

most favorable to the prosecution, reasonable minds could find that Woodley committed the rape

with force or threat of force.

The standard for determining sufficiency of the evidence is "whether after reviewing the

evidence in the light most favorable to the prosecution, any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443

U.S. 307, 317 (1979).  In reaching its determination as to the sufficiency of the evidence, a court

may not substitute its determination of guilt or innocence for that of the fact-finder, nor may it

weigh the credibility of witnesses.  *See id.*; *see also Walker v. Engle*, 703 F.2d 959, 970 (6th Cir.

1983).

14

The Supreme Court reemphasized the deference federal courts should give to factual determinations in state court convictions in *Wright v. West*, 505 U.S. 277, 296 (1992).  In that case, the Court stated that "[i]n *Jackson*, we emphasized repeatedly the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review." Further, "[a]ny conflicting inferences arising from the record . . . should be resolved in favor of the prosecution."  *Heinish v. Tate*, 9 F.3d 1548, 1993 WL 460782 (6th Cir. 1993) (unpublished opinion) (citing *Walker*, 703 F.3d at 969-70).

In the instant action, the Court of Appeals found Woodley's death threats and the fact he laid on top of the victim and she experienced pain, sufficient for a reasonable jury to find Woodley committed the rapes with force.

The Ohio Supreme Court has held that "[f]orce need not be overt and physically brutal... as long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." *State v. Eskridge*, 38 Ohio St.3d 56, 58-59 (1988). "A threat of force can be inferred from the circumstances surrounding sexual conduct ...." *State v. Schaim*, 65 Ohio St.3d 51, at paragraph one of the syllabus (1995). Moreover, O.R.C.

§ 2907.02(C) provides that "[a] victim need not prove physical resistance to the offender in prosecutions under this section."   In *State v. Eskridge*, the Ohio Supreme Court noted that the degree of force necessary for imposition of a sentence of life imprisonment for the crime of rape is related to the "age, size and strength of the parties and their relationship to each other."  38 Ohio St.3d 56, 58 (1988)(quoting *State v. Lobus*, 102 Ohio St. 26, 38-9 (1921).

In the instant action, although the timing of the threats made to the victim is unclear,[4]

other evidence exists to sufficiently establish force under Ohio law.   The victim's account of the

events clearly indicate that Woodley attempted to penetrate her vagina with his penis, this hurt

the victim and she told him to stop.  (Tr. 346.)   Woodley also attempted to penetrate the victim's

anus with his penis, which also hurt her.   (Tr. 353.)   The victim also reported being scared that

her grandmother would find out about the sexual acts.  (Tr. 355.)   During their initial encounters

at his home, he undressed her, told her to get on the couch, laid on top of her, and started

"humping" her.  (Tr.341-2.)  Taking into account that the victim was a preteen girl in the fifth

grade at the time of the rapes and that Woodley was a grown-man who was nearly 50 years old,

it appears these factors are sufficient to meet the force element under the standard set forth in

*Eskridge* and a rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt.[5]

---

[4] The only other statement that may be interpreted as a threat, *i.e.*, "you better not tell
[any]one," occurred after Woodley touched the victim's breast in the library.  The victim
testified that these threats occurred in the summer before she entered the fifth grade, which
would have been the summer of 2000.  (Tr. 334.)  The defendant's statement to the police
reflected that the relationship between the defendant and the victim began in June of 2000 with
touching and kissing, that she started visiting him at his house in June and July of 2000, and that
he digitally penetrated her in July of 2000.  (Tr.  397-400.)  The sexual conduct continued at
least into April of 2001 (*Id.*).  It ended when the school principal discovered a note  in the
victim's purse from the victim to the defendant.  (Tr. 285-6.)  Both rape counts alleged the
conduct occurred in July of 2000.  (Tr. 585.)  However, there is no evidence establishing a
sequence of events regarding this threat and the rape offenses.  The victim testified that she saw
Woodley at the library more than once and at his house.  Both the victim and Woodley testified
that they were together at the library numerous times.

[5]In its closing argument regarding the element of force, the state alluded to the size
difference between the defendant and the victim.  (Tr. 574.)  This Court cannot review the
accuracy of this statement as the Court has not found, and the state has not pointed to any
evidence in the record that substantiates this claim made in closing argument.

Moreover, while this Court's interpretation of the definition of "force" may have been different from the Ohio Supreme Court's interpretation, it is not the place of this federal court to review the state court's interpretation of its laws.  It is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review."  *Bradshaw v. Richey*, 546 U.S. 74 (2005).  As the Sixth Circuit has explained:

> Evidence can be insufficient only in relation to a rule of law requiring more or different evidence. When a state court enters or affirms a conviction, it is saying that the evidence satisfies the legal norms. These norms are for the state to select. State law means what state courts say it means. A claim that the state court misunderstood the substantive requirements of state law does not present a claim under § 2254.

*Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir.2002) (quoting *Bates v. McCaughtry*, 934 F.3d 99 (7th Cir.1991)).  Habeas relief is not available based upon a perceived error of state law.  Thus, to the extent that Woodley challenges the state court's interpretation of the term "force," this challenge will not be reviewed by this Court.  Nor is it within the province of this Court to second-guess the jury's factual determinations.  The facts presented at trial were sufficient to meet the state court's interpretation of the term "force."

Accordingly, the Court of Appeals' decision is neither contrary to, nor an unreasonable application of clearly established federal law.

17

## IV.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends Woodley's Petition for Writ of Habeas Corpus (Doc. No. 1) be DENIED.

s/ *Nancy A. Vecchiarelli*
NANCY A. VECCHIARELLI
U.S. MAGISTRATE JUDGE

Date: November 15, 2006

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of this notice.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

18