IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| | : | |
| DAVID WOODLEY, | : | CASE NO.  1:05 CV 0028 |
| | : | |
| Petitioner, | : | |
| | : | |
| -v- | : | MEMORANDUM AND ORDER |
| | : | ADOPTING REPORT AND |
| MARGARET BRADSHAW, Warden, | : | RECOMMENDATION DENYING |
| | : | PETITION FOR WRIT OF HABEAS |
| | : | CORPUS |
| Defendant. | : | |

UNITED STATES DISTRICT JUDGE LESLEY WELLS

This matter is before the Court on David Woodley's ("Mr. Woodley" or
"Petitioner") petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.
(Docket No 1).  Mr. Woodley challenges his state convictions for rape, gross sexual
imposition, and importuning, all involving a child under the age of 13.  Magistrate Judge
Nancy A. Vecchiarelli submitted a carefully argued Report and Recommendation
("R&R") to deny the Petitioner's writ in its entirety.  (Docket No. 25).  Mr. Woodley filed
objections to the R&R on 15 December 2006.  (Docket No. 28).

For the reasons set forth below, and after de novo consideration of the
Petitioner's objections, the Court adopts and affirms the R&R.


**I.  BACKGROUND**

The Federal Magistrates Act requires a district court to conduct a de novo review
only of those portions of the R&R to which the parties have made an objection.

1

28 U.S.C. § 636(b)(1).  Moreover, the factual findings of a state court are presumed to be correct.  A federal court may only diverge from a state court's factual findings if the Petitioner shows by clear and convincing evidence that the findings are erroneous. 28 U.S.C. § 2254(e)(1).

On 8 November 2001, a Cuyahoga County jury convicted Mr. Woodley on four counts of gross sexual imposition of a person under the age of 13 in violation of O.R.C. § 2907.05; two counts of rape of a person under the age of 13, with force or threat of force in violation of § 2907.02; and one count of importuning a person under the age of 13 in violation of § 2907.07.  The trial court sentenced Mr. Woodley to three years imprisonment for each count of gross sexual imposition, nine months for importuning, and a life sentence for each count of forcible rape, all sentences to be served consecutively to each other.

The Court of Appeals, Eighth Appellate District, Cuyahoga County, Ohio delineated the facts of this case on direct appeal.  Because Mr. Woodley has not rebutted these factual findings by clear and convincing evidence, the Court presumes they are correct and, accordingly, recites the following facts:

> At trial, the State presented seven witnesses, including the principal of Child's elementary school who testified that a lost purse came into her possession. In order to verify Child as its owner, she opened the purse and discovered a letter Child wrote to appellant, describing sex acts between her and the appellant. The principal then contacted Child's parents, a social worker, and the police.
> East Cleveland Detective Cleveland investigated the principal's report and testified that she spoke with Child about the letter. Child identified appellant as the "David" she wrote the letter to, and provided police with his pager number and address.
> Child testified that she met appellant at the East Cleveland Public Library which she frequented with her sister and brother. Child stated that appellant initiated a conversation with her and drew cartoon characters for

2

her. Later, appellant fondled her and told her not to tell anyone. Child testified that appellant would give her money if she wrote him letters with "nasty things" in them. The sexual activity between appellant and Child continued at appellant's home which included sexual intercourse, digital penetration, fondling, and oral sex. Child testified that she did not tell anyone about the sexual activity because she was afraid. Child stated that appellant told her he would kill her if she told anyone and reported that she went to appellant's house more than thirty times.

Child's younger sister testified that appellant offered her money to have sex with him and that she was present when appellant asked Child to write him letters with "nasty stuff."

East Cleveland Detective Johnstone testified that after appellant's arrest, he advised appellant of his Miranda rights and proceeded to interview him. During the interview, appellant provided a statement to Det. Johnstone and Det. Cleveland where he confessed to meeting Child at the library, gaining her trust and to the sexual activity with Child, including fondling, oral sex, digital penetration, and sexual intercourse. Det. Johnstone testified that appellant appeared to be very relieved that he was discovered. Johnstone stated that the appellant's oral statement was typed and appellant then read and initialed each paragraph and signed the statement.

East Cleveland Detective Jackson also testified and stated that on May 17, 2001, he gave appellant his Miranda rights again and then asked if appellant would consent to the search of his residence. Appellant agreed and signed a consent to search form. Appellant then accompanied the officers to his residence and permitted them entry to search his residence. During the search, the officers discovered child pornography books and articles, and several photographs of Child shown seated inside appellant's home.

Contrary to appellant's statement to the police, appellant testified at trial that Child came to his home to discuss the Bible. He denied ever threatening or touching Child in the library and stated, "I have more respect for the library to do anything like that." Appellant stated that Child came to his house more than 20 times, that he met with her at the library 10 times, and that he wanted her to write him letters containing "positive things" about him. At trial, the appellant denied any sexual activity with Child.

Appellant testified that he agreed to give the police a statement, that he was advised of his rights, and that he was aware that he had a right to an attorney. He testified that he "tried to be in more accordance with them as possible, and be as believable as possible." Appellant stated "I wanted them to believe me that I had done these things. I knew the serious allegations that were against me." However, appellant went on to testify that the statement he gave to the police was not true. Appellant testified that he confessed to the police in order to speed up the process

3

so that it could be taken to trial and because he wanted the experience.
Appellant also testified that he consented to the search of his residence.

State of Ohio v. Woodley, 2003 WL 1900935, *1 - *3 (Ohio App. 8 Dist., April 17, 2003).

The state appellate court affirmed in part the trial court's judgment, but remanded

the case for the limited purpose of notifying Mr. Woodley of his mandatory post-release

control.  Id. at *13.  The Ohio Supreme Court did not accept Mr. Woodley's appeal for

review.  State of Ohio v. Woodley, 100 Ohio St.3d 1425 (Ohio 2003).

On 6 January 2005, Mr. Woodley filed with this Court a petition for a writ of

habeas corpus, asserting two grounds for relief:

> Ground One: The trial court denied the indigent Mr. Woodley his federal
> constitutional rights, guaranteed by the Fifth, Sixth and Fourteenth Amendments,
> to due process and trial, when it refused to order that a psychiatric evaluation be
> prepared despite substantial indicia that Mr. Woodley's confession was
> involuntary, he was incompetent to stand trial, and he was insane at the time of
> the alleged offenses, thus preventing Mr. Woodley or his counsel from effectively
> litigating these issues.
>
> Ground Two:  The evidence was insufficient to sustain a conviction for
> forcible rape of a child under O.R.C. 2907.02 (2001 ed.), thus causing the rape
> convictions to be in violation of Fourteenth Amendment due process.

(Docket No. 1, p. 4).

## II.  LAW AND ARGUMENT

### A.  Report and Recommendation

Magistrate Judge Vecchiarelli recommends this Court deny Mr. Woodley's

petition because the state court proceedings were not contrary to, nor did they involve,

an unreasonable application of clearly established federal law.  With respect to the first

ground for relief, the R&R advises that: (1) the trial court made a sufficient inquiry into

4

Mr. Woodley's competency to stand trial; (2) denial of Mr. Woodley's request for a psychiatric evaluation did not violate his due process rights because the Petitioner failed to demonstrate to the trial court that his sanity at the time of the offense would be a significant factor at trial; and (3) the trial court made a sufficient inquiry into Mr. Woodley's capacity to make a voluntary confession.  The R&R, further, recommends the Petitioner's second ground for relief lacks merit, because the trial evidence proved sufficient to enable a rational trier of fact to find the basic elements of the forcible rape charges beyond a reasonable doubt.

Mr. Woodley objected to the R&R, arguing that the Magistrate Judge erred in her recommendations as to both grounds for relief.  The Petitioner contends that his due process rights were violated because he did demonstrate to the trial court that his sanity was likely to be a significant factor at trial, and because the trial court refused to hold a competency hearing at which expert testimony could be presented, in violation of Ohio law.  He further argues that the psychiatric evaluation which the state refused to provide was crucial to his motion to suppress and, therefore, prevented him from mounting a meaningful defense to the evidence presented against him.  Finally, the Petitioner argues that the Magistrate Judge erroneously relied on the Ohio Supreme Court's decision in State of Ohio v. Eskridge, 526 NE.2d 304 (Ohio 1988) in recommending to this Court that there was sufficient evidence presented at trial on which a rational trier of fact could conclude that the defendant was guilty of the forcible rape charges.

5

### B.  Standard of Review

Under Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636 (b)(1)(C), this Court reviews <u>de</u> <u>novo</u> those portions of the R&R to which specific objections are made.  Upon review, this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  In the Sixth Circuit, objections to an R&R "must be clear enough to enable the district court to discern those issues that are dispositive and contentious."  <u>Miller v. Currie</u>, 50 F.3d 373, 380 (6th Cir. 1995).

Federal habeas corpus law permits federal courts to entertain petitions on behalf of a person "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  This Court's review of the decisions of the state trial and appellate courts is governed by 28 U.S.C. § 2254(d) of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  A federal court may grant a writ of habeas corpus if a state court adjudication resulted in a decision that was either contrary to established federal law or involved an unreasonable application of established federal law.  <u>Williams v. Taylor</u>, 529 U.S. 362, 370 (2000); 28 U.S.C. §2254(d)(1).  "A state court decision is an unreasonable application of clearly established federal law if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  <u>McClain v. Prunty</u>, 217 F.3d 1209, (6th Cir. 2000) (quoting <u>Williams</u>, 529 U.S. at 413, internal quotations omitted).

6

### C.  Ground One: Trial Court's Denial of a Psychiatric Evaluation

The Petitioner's first ground for relief asserts that the trial court denied his due

process rights when it refused to order a psychiatric evaluation despite evidence that

Mr. Woodley's confession was not voluntary, that he was not competent to stand trial,

and that he was insane at the time of the offense.  Mr. Woodley contends that he could

not effectively raise these constitutional challenges in his defense because the state

would not provide him, an indigent criminal defendant, with a psychiatric evaluation.

The Petitioner twice requested the state provide him with a psychiatric medical

exam before trial.[1]  He filed a written motion on 22 August 2001.[2]  The trial court denied

the motion, but then heard oral argument on the issue at a competency hearing held on

10 September 2001.[3]  At the hearing, Mr. Woodley's counsel challenged whether his

client was competent to stand trial because he was unable to assist counsel in pretrial

preparation and was "prone to giving very short, repeated, almost rhythmic answers,

saying the same statement over and over again."  (Docket Nos. 17-19, pretrial hearings

---

[1]  In Ohio, a trial court's decision to provide a psychiatric examination is within the trial judge's discretion.  O.R.C. § 2945.371(A) provides, "If the issue of a defendant's competence to stand trial is raised or if a defendant enters a plea of not guilty by reason of insanity, the court may order one or more evaluations of the defendant's present mental condition, or, in the case of a plea of not guilty by reason of insanity, of the defendant's mental condition at the time of the offense charged."

[2]  Mr. Woodley's motion to the state trial court for a psychiatric evaluation was not submitted by the parties to this Court as part of the official record.

[3]  Ohio law requires trial courts to hold a competency hearing in criminal cases where the defendant challenges his competency to stand trial prior to the commencement of trial.  O.R.C. § 2945.37 (B).  Criminal defendants are presumed competent to stand trial in Ohio, unless after a competency hearing, a trial judge finds by a preponderance of the evidence that the defendant is incapable of understanding the nature of the criminal proceedings or assisting in his own defense.  O.R.C. § 2945.37(G).

and trial transcript, hereinafter "Tr.," at 10).  Defense counsel informed the Court that Mr. Woodley had never received psychiatric treatment, but that his mother had some history of psychiatric problems.  Id. at 11.  After a colloquy with the Petitioner regarding his educational background, reading habits, and his ability to work and communicate with his trial counsel, the trial judge concluded Mr. Woodley was competent to stand trial and upheld his earlier ruling denying the Petitioner's motion for a psychiatric evaluation. Id. at 13-17.

The trial court again entertained a motion for a psychiatric evaluation on 23 October 2001 at a suppression hearing.  Mr. Woodley filed a motion to suppress, challenging his mental capacity to have waived his right to silence and to have consented to a search of his home.[4]  At the suppression hearing, defense counsel argued that unless the state provided Mr. Woodley with a psychiatric evaluation, he would not be able to adequately challenge the voluntariness of his confession or his consent to the search.  (Tr. at 34).  The Court heard testimony from the detective who took Mr. Woodley's confession.  The trial judge then questioned Mr. Woodley as to whether he understood the nature of the charges raised against him, the number of years in prison he could be sentenced to if he is found guilty, his right to go to trial and the nature of the trial proceedings, and the effect his written and signed confession could have on a jury.  The trial judge closed the hearing by denying Mr. Woodley's motion to suppress, finding that Mr. Woodley's confession was a "knowing, intelligent, voluntary statement to the police," that there was insufficient evidence to show any

---

[4]  Mr. Woodley's motion to suppress was not submitted by the parties to this Court as part of the official record.

8

police coercion in obtaining the confession, and that there was insufficient evidence of

"incapacity or insanity here, any more than any other person …who is dealing with sex

with children."  Id. at 95-96.  The trial court further upheld its earlier decision denying the

referral request for a psychiatric evaluation.  Id. at 97.

The state appellate court reviewed the trial court colloquy with Mr. Woodley as

follows:

> We note that, even where a defendant pleads not guilty by
> reason of insanity, there is no automatic entitlement to an
> independent psychiatric evaluation pursuant to R.C.
> 2945.39.  State v. Hix (1988) 38 Ohio St.3d 129, 130, 527
> N.E.2d 784.  The transcript demonstrates that appellant did
> not enter a plea of not guilty by reason of insanity.
>
> Further, the appellant never received mental health
> treatment nor had he been institutionalized prior to his arrest.
> At the hearing, the trial court addressed appellant who
> informed the court as follows, "Unfortunately, I have come to
> you with this type of case. But it won't be necessary to put
> me on suicide watch. I'm very competent to stand trial."
> Appellant stated that he graduated highschool, was
> employed in the housekeeping field and took care of his
> elderly mother who lived with him. The court inquired about
> his mental health and appellant responded, "I'm doing real
> well. I've adjusted well. I get along with everyone in my pod,
> and I respect them." Appellant further informed the court that
> while incarcerated he was reading the daily newspaper, the
> Bible and helping other inmates cope with their confinement
> during daily Bible study classes. The following colloquy took
> place:
>
>  "THE COURT: * * * Have you ever been able to have those
> conversations with your attorney?
>
> "THE DEFENDANT: Yes, I have. And I told him the truth.
>
> "THE COURT: Okay. I don't know want to know whatever it
> is.
>
> "THE DEFENDANT: Okay. I'm sorry.

"THE COURT: Okay. Are you in a position to take advice and appreciate advice, and give the consideration it deserves?

"THE DEFENDANT: Yes, I can. And I thanked him for that. He's been very helpful with me.

"THE COURT: He's a very well-respected attorney. Do you recognize him as a good attorney?

"THE DEFENDANT: Yes, I do. Very much so. I don't have nothing bad to say about him. You know, he's been really good support to me. I understand he's looking for my best interest. We're kind of contemporary in age, and so forth. I feel I have to arrive at this truth, and I want to thank him before you, personally ."

State of Ohio v. Woodley, 2003 WL 1900935, *5.

The trial court's refusal to provide Mr. Woodley with a psychiatric evaluation is consonant with clearly established federal law, and therefore, did not violate his constitutional right to due process as guaranteed by the Fourteenth Amendment. The U.S. Supreme Court's opinion in Ake v. Oklahoma, 470 U.S. 68 (1985) is instructive on this issue, as it addressed the specific question of whether the Fourteenth Amendment's Due Process Clause requires states to provide an indigent criminal defendant with a psychiatric expert to aid in the defendant's preparation for trial.[5] See 470 U.S. at 77. "When a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to

---

[5]In Ake, the defendant's mental health was at issue because his sole defense was insanity, his behavior was so strange that the trial court had him examined for competency, a state psychiatrist found him incompetent to stand trial and recommended that he be committed, Ake was competent only when sedated, the state psychiatrists described a severe mental illness that may have existed for years, and the prosecutor submitted evidence of Ake's future dangerousness through the testimony of the state's own psychiatrists. Id. at 86, 105 S.Ct. 1087.

present his defense." Id. at 76.  Ake reasoned that although states are not required to

go so far as to provide indigent defendants with the assistance that a wealthier

defendant might be able to provide for himself, the state must provide indigent

defendants with the "basic tools of an adequate defense or appeal." Id. at 77 (quoting

Britt v. North Carolina, 404 U.S. 226, 227 (1971), internal quotations omitted).

Balancing the interests of the defendant and the state and weighing the probable value

of psychiatric assistance against the risk of error in the criminal proceeding if that

assistance is refused, Ake held –

> when a defendant has made a preliminary showing that his sanity at the time of
> the offense is likely to be a significant factor at trial, the Constitution requires that
> a State provide access to a psychiatrist's assistance on this issue if the
> defendant cannot otherwise afford one.

Id. at 83.

In the present case, Mr. Woodley failed to make the required preliminary

showing.  At the pretrial hearings, Mr. Woodley's trial counsel went to great lengths to

challenge Mr. Woodley's competency to stand trial and his mental capacity to make a

voluntary confession.  Since Ake, the Supreme Court has ruled that an indigent criminal

defendant seeking psychiatric assistance must base his preliminary showing on more

than a general statement of need; rather, he must support his request with specific

facts.  See Caldwell v. Mississippi, 472 U.S. 320, 323 n. 1, 105 S. Ct. 2633, 86 L.Ed.2d

231 (1985).

In this instance, the record is bereft of specific facts indicating incompetence or

absence of mental capacity.  The trial court's colloquy with Mr. Woodley did not yield the

image of a man lacking in rationality.  Moreover, Mr. Woodley's counsel's request for a

11

psychiatric evaluation for his client did not provide the necessary specific facts where the request was predicated on his client's alleged inability to assist counsel in pretrial preparation, and  where his client was "prone to giving very short, repeated, almost rhythmic answers, saying the same statement over and over again."

Further, the record indicates Mr. Woodley did not introduce a plea of not guilty by reason of insanity, nor notify the trial court that his sanity at the time of the offense would be raised as a significant factor at trial.  As such, the Petitioner failed to make the required preliminary showing under Ake and the state did not have an obligation to provide a psychiatric evaluation.  See Powell v. Collins, 332 F.3d 376, 392 (6ᵗʰ Cir. 2003).  The state appellate court's determination in support of the trial Court's refusal to provide Mr. Woodley a psychiatric evaluation was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.

### 1.  Voluntariness of Confession and Consent

In his objections to the R&R, Mr. Woodley contends that his arguments to the trial judge regarding his lack of capacity to make a voluntary confession, and his lack of competency to stand trial, satisfied the "preliminary showing" requirement under Ake to trigger a state funded psychiatric evaluation.[6]  These arguments, however, do not provide sufficient grounds to trigger the Petitioner's due process right to a state provided psychiatric expert as articulated in Ake.

---

[6]  In his habeas petition, Mr. Woodley also offers in support of his due process claim that he was insane at the time of the offenses.  However, as explained above, this argument was never presented to the trial judge.

12

First, Woodley maintains that the trial court's denial of his request for a psychiatric evaluation violated his constitutional rights because such an evaluation may have revealed that he did not have the mental capacity to waive his <u>Miranda</u> rights, provide a voluntary confession, or consent to a search of his residence.  This argument is both inapposite and insufficient.  State provided psychiatric evaluations are not the safeguard the Supreme Court employs to protect a defendant's voluntary confession or consent.  Rather, the prerequisite is coercive police activity.  The Petitioner's sanity at the time of his confession or consent has no bearing on its "voluntariness" where there is no evidence of coercion.  <u>See</u> <u>Colorado v. Connelly</u>, 479 U.S. 157, 107 S. Ct. 515, 93 L. Ed.2d 473 (1986) ("We hold that coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment");  <u>United States v. Newman</u>, 889 F.2d 88, 94(6th Cir. 1989).

Further, the record clearly demonstrates the trial court made a reasonable finding, after the suppression hearing, that Mr. Woodley's confession occurred voluntarily, knowingly, and intelligently, without any evidence of police coercion.  In addition, after sufficient inquiry, the trial court reasonably concluded that Mr. Woodley had the capacity to voluntarily consent to a search of his residence.  Accordingly, the Court finds the State Appellate Court's decision is neither contrary to, nor an unreasonable application of, clearly established federal law.

13

## 2.  Competency to Stand Trial

In determining competency to stand trial, Court's look to whether the defendant has the present capacity to consult with his lawyer "with a reasonable degree of rational understanding," and he has the ability to understand the nature of the proceedings against him and to aid in the preparation of his defense.  Stanley v. Lazaroff, 82 Fed. Appx. 407, 416 (6th Cir. 2003) (quoting Dusky v. United States, 362 U.S. 402 (1960), internal quotations omitted). O.R.C. § 2945.37(G), provides that a defendant is presumed to be competent to stand trial unless he or she proves by a preponderance of the evidence that he or she is incapable of understanding the nature of the proceedings is incapable of assisting in his or her own defense.  See Id.  Further, a trial court must hold a competency hearing where the defendant challenges his competency to stand trial.  O.R.C. § 2945.37(B).

In his objections, Mr. Woodley relies upon the Ohio Supreme Court's determination in State v. Were to contend that the trial court's colloquy with the defendant was inadequate to determine his competency.  State v. Were, 94 Ohio St.3d 173, 761 N.E.2d 591 ("The right to a hearing rises to the level of a constitutional guarantee when the record contains sufficient "indicia of incompetency" to necessitate inquiry to ensure the defendant's right to a fair trial).  Unlike the instant case, the Court in Were did not hold a competency hearing.  Further, subsequent state court decisions have interpreted Were to require only a hearing in which the Court engages the defendant in a colloquy to determine whether there is sufficient "indicia of incompetency."  See State v. Ortiz, 2007 WL 2409939 (Ohio App. 9 Dist., Aug. 27,2007) (finding "the trial court failed to engage in any colloquy with appellant to determine

14

whether he understood the nature of the proceedings against him or whether appellant had sufficient present ability to consult with his counsel.  The statute requires the trial court to hold such a hearing when the issue of competency is raised prior to trial");  State v. Robinson, 2007 WL 4442663 (Ohio App. 8 Dist., Dec. 20, 2007) (finding no warrant for reversal where the trial court's colloquy with the defendant yielded a record devoid of sufficient indicia of incompetency).  Finally, the facts of the instant case do not implicate Were, but rather, parallel the situation in State v. Bock (1986), 28 Ohio St.3d 108, 109, 502 N.E.2d 1016, 1018, where the defendant, as here, testified in his own defense and was subject to cross-examination.  In Bock, the court found harmless error in the trial court's failure to conduct a competency hearing in part because the defendant testified in his own defense and was subject to cross-examination, and the record failed to reveal sufficient indicia of incompetency.  Id.

A review of the record indicates that the trial court's colloquy with Mr. Woodley (Tr. 10-54) does not reveal a sufficient indicia of incompetency.  Without that indicia the trial court's refusal to order a psychiatric evaluation does not rise to constitutional proportions.  See Pate v. Robinson, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed.2d 815 (1966);  Drope v. Missouri (1975), 420 U.S. 162, 180, 95 S.Ct. 896, 908, 43 L.Ed.2d 103 (1975).  Accordingly, the state appellate court's decision is neither contrary to, nor an unreasonable application of clearly established federal law.

15

### 3.  Sanity Determination

Mr. Woodley takes issue with the R&R, and contends his confession and trial testimony (Tr. 10-12, 482-515) demonstrated that his sanity was likely to be a significant factor at trial and, consequently, the state's refusal to provide a psychiatric evaluation amounted to a constitutional deprivation requiring this Court to grant his habeas writ.

The record indicates the state appellate court reviewed Mr. Woodley's claim of error and found no abuse of discretion by the trial court.  The state appellate court relied upon a state standard, consonant with the holding in Ake, that a psychiatric evaluation was required "only where the trial court finds, in the exercise of sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial."   quoting State v. Mason (1998), 82 Ohio St.3d 144, 694 N.E.2d 932 (1998).

The particularized showing required in Mason parallels the legal standard required under Ake.  Ake held that psychiatric assistance is a basic tool of an adequate defense "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial," Ake 470 U.S. at 83.  Moreover, in Ake, the Supreme Court weighed three factors in determining whether access to competent psychiatric assistance was required: (1) "the private interest that will be affected by the action of the State"; (2) "the governmental interest that will be affected if the safeguard is to be provided"; and (3) "the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous

16

deprivation of the affected interest if those safeguards are not provided." <u>Ake</u>, 470 U.S. at 77.

The Court does not find that the state appellate court's application of <u>Mason</u> to the trial court record, as a legal analog of <u>Ake</u>, was objectively unreasonable or contrary to clearly established federal law.  Accordingly, bound by the dictates of AEDPA, the Court concludes that Mr. Woodley is not entitled to habeas relief on this claim.

### D.  Ground Two:  Sufficiency of Evidence for Forcible Rape Conviction

The Petitioner's second ground for relief asserts that the judgment of the state trial court violated his due process rights because the evidence presented at trial was insufficient to support a conviction of child rape by force or threat of force under O.R.C. § 2907.02.

The Fourteenth Amendment requires a state to prove beyond a reasonable doubt every element of the charged offense.  <u>In re Winship</u>, 397 U.S. 358, 364 (1970). "Sufficient evidence exists to support a conviction if, after viewing the evidence in the light most favorable to the prosecution, the [habeas] court can conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Apanovitch v. Houk</u>, 466 F.3d 460, 488 (6th Cir. 2006)(citing <u>Jackson v. Virginia</u>, 443 U.S. 307, 324 (1979)).

This standard imposes a heavy burden on habeas petitioners, as circumstantial evidence alone may be enough to support a conviction if that evidence is substantial and competent.  <u>Id.</u>  In considering a habeas petition based on an insufficiency of the evidence claim, a federal court is not permitted to weigh evidence, resolve conflicts in

17

testimony, or render its own determination of guilt or innocence.  McKenzie v. Smith, 326 F.3d 721, 727 (6th Cir. 2003).  Thus, the standard does not question whether the evidence is sufficient to convince the habeas court of the petitioner's guilt, but whether the evidence is sufficient to convince any rational trier of fact.  Scott v. Perini, 662 F.2d 428, 431-32 (6th Cir.1981).

At trial, the victim testified she was 11 years old at the time she and Mr. Woodley engaged in sexual conduct.  (Tr. at 329).  She testified they first met at a public library, that he befriended her by starting conversations with her and drawing pictures for her, and that she shared thoughts with Mr. Woodley that she shared with nobody else.  (Tr. at 331, 335-336). The first sexual act occurred in the library, where Mr. Woodley lifted the victim's shirt and touched her right breast while they were standing behind a book case.  Id. at 333.  She testified that she visited the Petitioner's home on multiple occasions, during at least one of these occasions Mr. Woodley took off his own clothes, the clothes of the child, and laid on top of her while moving his body up and down.  Id. at 343.  On another occasion, Mr. Woodley applied lubricant to the victim's vagina and attempted to penetrate her with his penis, but he stopped when she told him that he was hurting her.  Id. at 345-346.  The victim also testified that on other occasions Mr. Woodley put his tongue on her breasts and vagina and penetrated her vagina with his finger.  Id. at 349, 354.  Mr. Woodley attempted to penetrate the victim anally with his penis on multiple occasions, but he stopped when she complained of pain.  Id. at 352-353.  The victim further testified that Mr. Woodley threatened to kill her if she told anyone about this conduct, and that he gave her money which she spent on "candy and stuff." Id. at 356-357.

18

Mr. Woodley maintains the state provided insufficient evidence to support the charge of two counts of rape of a person under the age of 13 with force or threat of force.  Ohio law provides: "No person shall engage in sexual conduct with another who is not the spouse of the offender … when … the other person is less than thirteen years of age, whether or not the offender knows the age of the other person."  O.R.C. § 2907.02(A)(1)(b).  The statute further provides that an offender who violates § 2907.02(A)(1)(b) by means of force or threat of force shall be sentenced to a term of life in prison.  O.R.C. § 2907.02(B).  The term force is defined as violence, compulsion, or physical constraint.  O.R.C. § 2901.01(A).

In the context of child rape, whether the rape was forcible depends upon several factors, including the age, size, and strength of the parties, as well as the nature of their relationship to one another.  State of Ohio v. Eskridge, 526 N.E.2d 304, 306 (Ohio 1988) (upholding the conviction of a man charged with the forcible rape of his four-year-old daughter and concluding that the father's acts of removing the young girl's panties and laying her on the bed demonstrated acts of compulsion and constraint); State of Ohio v. Dye, 695 N.E.2d 763, 766 (Ohio 1998)( finding sufficient evidence of forcible rape where the victim was 9 years old and his rapist was 44, there existed a clear disparity in the parties' physical size, and the rapist was a figure authority to the child, even though he was not a parent, because he threatened to stop being the child's friend if the child told anyone about the rape and because the child feared the rapist might hit him if he told anyone).  Eskridge further recognized that forcible rape of a child need not be overt or physically brutal, but that so long as the victim's will was overcome by fear or duress, the forcible element could be established.  Id. (concluding that because of the

19

tender age of the child and because the father, acting as a figure of authority, instructed his daughter not to tell anyone about the rape,  the child's will was overcome by her rapist); see Dye, 695 N.E.2d at 767 (recognizing that only a minimal amount of force or threat of force will satisfy the force element of the statute).

In his objections to the R&R, the Petitioner asserts that Eskridge  is inapposite to the present case because the holding is limited to rape cases where the defendant has a parental or quasi-parental relationship with the victim.  Although Eskridge gave considerable weight to the fact that the defendant was the father of the 4 year old victim, the court's analysis regarding the relationship of the parties focused on the fact that the child was instructed not to tell anyone about the rape by a figure of authority, her father. 526 N.E.2d at 306.   Further, the Ohio Supreme Court reaffirmed the Eskridge holding in Dye, that the age, size, strength, and relationship of the parties are the proper considerations in determining the element of force under § 2907.02(B).  695 N.E.2d at 766.  Accordingly, the holdings and analyses in Eskridge and Dye are both applicable in the matter before this Court.

In the instant case, the jury heard testimony that the victim was 11 years old at the time of the offense, and that Mr. Woodley repeatedly committed sexual acts on the young child.   This evidence is sufficient for any rational trier of fact to render a guilty verdict with respect to the rape charges involving a person under the age of 13. Although Mr. Woodley denied in his trial testimony that any of these sexual acts occurred, this Court's job is not to weigh conflicting evidence but to determine if a rational trier of fact could find guilt beyond a reasonable doubt based on evidence adduced at trial.

20

With respect to the force element, the jury heard evidence that a forty-eight year old man befriended an eleven year old girl in the library, he talked with her, drew her pictures, and gave her money.  She shared thoughts with him that she shared with nobody else.  The man invited the child to his house, undressed her and then laid on top of her naked.  On more than one occasion, he attempted to penetrate her vaginally and anally despite her complaints of pain.  Moreover, she was instructed by this man, 35 years her senior, to not tell anyone about the sexual conduct or he would kill her.

Relying upon Eskridge, the state appellate court found the record of these facts sufficient for a rational jury to find, beyond a reasonable doubt, Mr. Woodley committed the rapes with force.   Under habeas review, this Court finds the facts presented at Mr. Woodley's trial were sufficient to meet the state court's interpretation of the term "force."  See Bradshaw v. Richey, 546 U.S. 74 (2005).

**III.  CONCLUSION**

For the reasons discussed above, this Court finds the Petitioner has failed to demonstrate the decisions of the state court were contrary to, or involved an unreasonable application of, federal law.  The Court adopts the recommendations of Magistrate Judge Vecchiarelli's R&R and denies Mr. Woodley's petition for a writ of habeas corpus.

The Court further certifies that an appeal from this decision could not be taken in good faith and that there is no basis upon which to issue a certificate of appealability. 29 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

IT IS SO ORDERED.

    /s/Lesley Wells
UNITED STATES DISTRICT JUDGE